#29660-aff in pt & rev in pt-SRJ
**2023 S.D. 24**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOSEPH DANIEL LeFORS,                          Plaintiff and Appellant,

    v.

KRISTA MAE LeFORS,                             Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE KEVIN KRULL
Judge

* * * *

HOLLIE L. SMITH of
Clayborne, Loos & Sabers, LLP
Rapid City, South Dakota                       Attorneys for plaintiff and
                                               appellant.


DEBRA D. WATSON
Rapid City, South Dakota                       Attorney for defendant
                                               and appellee.

* * * *

ARGUED
FEBRUARY 15, 2022
REASSIGNED 03/29/2023
OPINION FILED **05/24/23**

#29660

JENSEN, Chief Justice (on reassignment).

[¶1.]	Joseph Daniel LeFors commenced a divorce action against Krista Mae LeFors after seventeen years of marriage.  Krista filed a counterclaim for separate maintenance and asked that the divorce be postponed until the parties had been married for twenty years, allowing her to become eligible to receive lifetime TRICARE health care coverage, as well as other military service member and family benefits.  Following a trial, the circuit court granted Krista a decree of separate maintenance, awarded her permanent alimony, and made an equitable division of marital property.  Joseph appeals.  We affirm in part, reverse in part, and remand.

**Facts and Procedural History**

[¶2.]	Joseph and Krista were married on June 4, 2002, shortly after both graduated from high school.  Joseph joined the military in 2002 while Krista worked at different positions for the first few years of marriage.  Their son was born in 2006, and their daughter was born in 2009.  The parties separated on January 7, 2019.  At the time of the separation, Joseph continued his military service while Krista was primarily responsible for child care and maintaining the home, and worked part-time as a substitute teacher.

[¶3.]	Joseph commenced an action for divorce in January 2019.  He requested the court to divide the marital property and order joint legal and physical custody of the children.  Krista answered and subsequently filed a counterclaim for divorce based on irreconcilable differences.  Krista sought an equitable division of the property, requested spousal support, and alleged fault against Joseph in the

-1-

form of extreme cruelty.  Krista also requested primary physical custody of the children and child support from Joseph.

[¶4.]     Following a hearing, the circuit court entered a temporary order establishing custody and support that required Joseph to pay child support of $600 per month and ordered that Krista and the children could remain in the home. Joseph was granted access to the home to remove specified items.

[¶5.]     On October 4, 2019, Krista filed a motion for contempt alleging that Joseph had violated the automatic temporary restraining order by terminating the insurance coverage on her vehicle.  She also alleged Joseph failed to pay amounts previously ordered by the court and removed items from the marital home in violation of the circuit court's order.  In her affidavit, she claimed that after the court ordered child support, Joseph "got mad" and quit paying car payments, car insurance, and credit card bills and removed her cell phone from his account. Joseph responded to Krista's motion and filed an application alleging Krista should be held in contempt for failing to file the parties' 2018 tax return, failing to pay her share of the child custody evaluator fee, and interfering with his parenting time.

[¶6.]     On December 2, 2019, Krista filed a motion to amend her counterclaim to allege a claim for separate maintenance under SDCL 25-4-40 on the grounds of extreme cruelty and, alternatively, to request a divorce on the same grounds. Following a hearing on January 14, 2020, the court granted Krista's motion to amend her counterclaim and did not find either party in contempt.  However, the court ordered Joseph to make all payments necessary to prevent the repossession of

Krista's vehicle and again required him to pay $200 within seven days so Krista could file the 2018 income tax return.

[¶7.] The circuit court held a two-day court trial on the complaint and counterclaim. Krista testified that troubles in the marriage began in 2012. She testified that Joseph drank a lot and was physically abusive when he was drunk. Krista explained that she never reported these incidents to the authorities because she did not want to jeopardize Joseph's military career. She stated that she stopped working from 2010 to 2015, at Joseph's request, so that she could stay home with the children. When their daughter started first grade, Krista began working as a substitute teacher, but Joseph told her he did not want her to work too many hours. Krista testified about the help she provided to Joseph to further his career, including taking classes and tests for him when he was in college and attending social events to help him meet new people. To be able to follow him on his assignments, she testified, she gave up going to school and developing a career. Kathy Knudson, Krista's mother, testified that she believed Joseph had a drinking problem that caused the breakup of the marriage. Knudson also testified that she provided Krista with over $25,000 since the separation to help with Krista's financial struggles. Joseph denied that he abused alcohol during the marriage or physically abused Krista.

[¶8.] Krista requested the circuit court to delay the entry of a divorce decree and enter an order for separate maintenance for a period of approximately two years. She explained that establishing a period of separate maintenance before the divorce would keep the parties married for twenty years and ensure her eligibility

for various lifetime benefits available to military dependents, including TRICARE health benefits. With TRICARE, Krista would have access to the pharmacy on the military base and would not have copays for any prescriptions. Krista also testified that she would be eligible for lower interest rates on her debts because she would fall under the Servicemembers Civil Relief Act. Additionally, Krista would be able to purchase lower cost groceries at the base commissary and make purchases at the base exchange without paying sales tax. She testified that if the divorce occurred before twenty years of marriage, she would not be able to go on the base to use those benefits, even if the children were on Joseph's health insurance plan.

[¶9.]     Following the trial, the circuit court entered findings of fact and conclusions of law and granted a decree of separate maintenance. The court also stated an intention to "enter a Decree of Divorce on or about June 30, 2022," a date more than twenty years after the marriage. The court stated that it would retain jurisdiction to enter a divorce decree at a later date. The court explained the purpose of the period of separate maintenance:

> to provide her with affordable medical benefits, access to the base for the children's health care and reduced cost for groceries, clothing and other necessities which Joseph is otherwise unable to pay or would result in substantial financial strain. Granting a separate maintenance will also allow Krista the benefit of the Servicemember's Civil Relief Act resulting in lower interest on her credit cards making it easier for her to manage the debt.

[¶10.]     The circuit court found "that Joseph has inflicted emotional and physical abuse on Krista during the marriage constituting extreme cruelty as defined in SDCL § 25-4-4." The circuit court awarded joint legal custody but named Krista the primary physical custodian. Noting that this was "a high conflict

situation[,]" the court specified that, to avoid conflict, Krista would be responsible for making decisions regarding "the children's education and health care[.]"

[¶11.]     The circuit court found that Krista made valuable contributions to the marital estate through her role as a wife, homemaker, and mother. In finding that Krista sacrificed her education and employment to support Joseph's military career, the court found Joseph's gross monthly income was $6,664.31, including base pay and housing allowance, while Krista's gross monthly income was $829.

[¶12.]     In dividing the marital assets, the court found the parties had more debts than assets. The car driven by Krista was purchased during the marriage, but the debt against it exceeded its value. The court assigned that vehicle to Krista and ordered Joseph to make the car loan and insurance payments on the vehicle. The court also determined that "[d]ue to the substantial disparity in income, the Court has given Krista more value in property and Joseph more debt in order to make an equitable division of the assets and liabilities . . . ." Excluding Joseph's retirement, he was awarded assets valued at $38,287 and debts of $76,893, a net value of negative $38,606. Krista was awarded assets valued at $41,000 and debts of $30,433, a net value of $10,567.

[¶13.]     The court also divided Joseph's Thrift Savings Plan (TSP) and his military retirement as marital property. Finding that "[r]etirement is deemed received in lieu of higher earnings and is divisible as property[,]" the circuit court equally divided the TSP as of the date of entry of the decree of separation and equally divided "the marital portion of Joseph's military retirement[,]" which it specified Krista would receive "following the granting of the divorce on or about

June 30, 2022." Additionally, the circuit court specified that "Joseph shall not take any action to reduce Krista's military benefits and, if he does so by transferring it to VA disability or a civil retirement plan, he shall pay her the difference." The circuit court also required Joseph "to enroll in the Spousal Benefit Plan (SBP) within one year following the divorce and pay the cost therefor so that Krista's military benefits will continue during her lifetime in the event of his untimely death."

[¶14.]     After dividing the property, the court found that "Krista has a need for alimony as reflected in her substantial budget shortage" and that Joseph has the ability to pay spousal support. The circuit court ordered Joseph to pay permanent alimony of $750 per month to Krista. The circuit court set Joseph's child support obligation at $1,057 per month. Additionally, the circuit court found that Joseph owed child support arrears of $4,200.

[¶15.]     Following the entry of the decree of separate maintenance, Joseph filed a verified motion to clarify the court's findings and a motion for reconsideration. Among his many arguments in the motion for reconsideration, Joseph argued that the circuit court had no statutory authority to make an equitable division of property before entering a divorce. He asked the court to divide the "assets at the time the Divorce Decree will be entered in June 2022." Krista resisted Joseph's motion to clarify and motion to reconsider.

[¶16.]     Joseph appealed before the circuit court ruled on his motion to reconsider alimony, and the circuit court later ruled it lacked jurisdiction to

#29660

consider the motion because of the appeal. Joseph raises three issues, which we

restate as follows:[1]

> 1.  Whether the circuit court abused its discretion in
>     granting separate maintenance.
>
> 2.  Whether the circuit court erred by dividing the property
>     between the parties when granting separate maintenance.
>
> 3.  Whether the circuit court abused its discretion in
>     awarding Krista permanent alimony in the amount of
>     $750 per month.

## Analysis

### *1. Grant of separate maintenance.*

[¶17.]     The standard of review in separate maintenance actions is abuse of

discretion. *Cady v. Cady*, 79 S.D. 500, 505, 114 N.W.2d 102, 104 (1962). "An abuse

of discretion is 'a fundamental error of judgment, a choice outside the reasonable

range of permissible choices, a decision . . . [that], on full consideration, is arbitrary

or unreasonable.'" *Coester v. Waubay Twp.*, 2018 S.D. 24, ¶ 7, 909 N.W.2d 709, 711

(alteration and omission in original) (quoting *Wald, Inc. v. Stanley*, 2005 S.D. 112,

¶ 8, 706 N.W.2d 626, 629). A circuit court can order separate maintenance on any

---

1.  After this Court heard oral arguments, Krista filed a motion for appellate
    attorney fees with this Court. "SDCL 15-26A-87.3 sets forth the substantive
    and procedural requirements for an award of appellate attorney's fees."
    *Wagner v. Brownlee*, 2006 S.D. 38, ¶ 20, 713 N.W.2d 592, 598. SDCL 15-26A-
    87.3(2) requires that "[t]he motion must be served and filed prior to
    submission of the action on its merits[.]" Krista's request for appellate
    attorney fees was not timely and is denied.

grounds which would be grounds for divorce.[2] "A decree of separate maintenance does not dissolve the marital bond. The primary purpose of obtaining separate maintenance is to enforce the [spouse's] duty of support." *Klinger v. Klinger*, 79 S.D. 182, 184, 109 N.W.2d 633, 634 (1961).

[¶18.]     The circuit court ordered separate maintenance on the grounds of extreme cruelty. In doing so, the court expressed its intention to delay entry of a divorce to ensure, under what is known as the 20/20/20 benefits rule, that Krista would receive "lifetime [TRICARE] health insurance coverage at minimal cost, Commissary and Base Exchange privileges and a Base ID allowing her access to medical facilities for the children."[3]

[¶19.]     Joseph argues that by entering a decree of separate maintenance and ordering him not to take any action that would prevent Krista from being eligible under the 20/20/20 benefits rule, the court not only required him to remain married, but effectively forced him to work for the United States Air Force until he reaches

---

2.     SDCL 25-4-40 provides:

> An action for separate maintenance may be maintained without
> request for divorce, upon any grounds which would be grounds
> for divorce, and in such cases the court shall have power to
> award temporary alimony, suit money, and permanent support
> for a spouse and the children of the parties, or any of them, by
> the other spouse.

3.     The "20/20/20 benefits rule" classifies an unremarried former military spouse as a "dependent" of a member or former member of a uniformed service, if they were married for at least twenty years, the service member performed at least twenty years of service creditable for retirement pay, and there is at least a twenty-year overlap of the marriage and the military service. 10 U.S.C. § 1072(2)(F) (2023). Dependents of active duty members or retired members may enroll in TRICARE. 32 CFR § 199.17 (2023).

twenty years of service. Joseph also asserts that ordering the parties to remain married precludes him from intimate relations with another woman lest he be discharged by the Air Force for adultery.[4] He contends these rulings infringe on his rights to remarry and leave the service.[5] Lastly, Joseph argues that financial reasons were insufficient to justify the court denying his request for divorce and ordering separate maintenance.

[¶20.] Separate maintenance is a particular proceeding by which a circuit court may order a person to provide support to a spouse and/or children. *See* SDCL 25-4-40. The statute permits the entry of separate maintenance on the same grounds as a divorce but does not otherwise define the instances in which a decree of separate maintenance is appropriate. The statute also does not impose a specified length of time for which a decree of separate maintenance may be entered. Additionally, SDCL 25-4-39 permits the court to order separate maintenance when a divorce is denied. "Though judgment of divorce is denied, the court may in an

---

4. Adultery is not an enumerated offense under the Uniform Code of Military Justice (UCMJ), but it is punishable as conduct that is prejudicial to good order and discipline or discrediting to the armed forces under UCMJ Article 134, which is designated as the "General Article." *See United States v. Mason*, 42 M.J. 584, 585 (A. Ct. Crim. App. 1995) (noting adultery may be charged under Article 134); 10 U.S.C. § 934, art. 134 (2023).

5. Joseph argues that he has a right to marry that includes the right of divorce. The United States Supreme Court has recognized that the right to marry is a fundamental right. *Obergefell v. Hodges*, 576 U.S. 644, 675, 135 S. Ct. 2584, 2604, 192 L. Ed. 2d 609 (2015). Joseph provides no authority for the proposition that there is a fundamental right to divorce, and we need not resolve the issue here because both parties contemplate ultimately ending their marriage through divorce. Suffice it to say that the Legislature may regulate how a marriage is created and how it is dissolved. *Maynard v. Hill*, 125 U.S. 190, 205, 8 S. Ct. 723, 726, 31 L. Ed. 654 (1888).

action for divorce provide for maintenance of a spouse and the children of the parties, or any of them, by the other spouse." SDCL 25-4-39. A plain reading of these statutes demonstrates a legislative intention to provide courts with discretion to determine when the remedy of separate maintenance may be appropriate, including in instances when a divorce decree is denied.

[¶21.] Based on the parties' circumstances, the circuit court determined that a period of separate maintenance, before entry of a divorce, was appropriate to ensure long-term financial stability for Krista and the children, consistent with what they were accustomed to during the marriage.[6] Further, there is no instance in this record where Joseph expressed to the circuit court that he had any intention to seek a discharge from the Air Force prior to twenty years of service. Instead, the evidence in the record demonstrates that Joseph has every incentive to continue his service until the twenty-year mark, and to do so not only benefits Krista and the children but also himself. Based upon our review of the particular circumstances of this case, we find no abuse of discretion in the court's decision to deny the entry of a divorce decree until after twenty years of marriage and grant a decree of separate maintenance.

---

6.    The court's decision is also consistent with the expressed legislative intention for a married person to support their spouse and children. "A person shall support himself or herself and his or her spouse out of his or her property or by his or her labor." SDCL 25-7-1. "While an action for divorce is pending, the court may in its discretion require one spouse to pay as alimony any money necessary to support the other spouse . . . ." SDCL 25-4-38. "The parents of a child are jointly and severally obligated for the necessary maintenance, education, and support of the child in accordance with their respective means." SDCL 25-7-6.1.

### 2.     *Division of property upon granting separate maintenance.*

[¶22.]     Joseph argues the circuit court had no authority to divide the marital estate as part of an order for separate maintenance.  He contends that South Dakota law only allows a division of marital property as part of a divorce decree.  Joseph argues the court was limited to awarding alimony and child support as part of its separate maintenance order.

[¶23.]     Krista acknowledges that the separate maintenance statutes do not reference a court's authority to divide property but argues that other statutes contemplate a court's ability to divide marital property in a legal separation.  She cites SDCL 25-4-75 and SDCL 25-4-79, which contemplate the division of marital assets in a decree of "legal separation."

[¶24.]     "Questions of statutory interpretation and application are reviewed under the de novo standard of review with no deference to the circuit court's decision."  *Long v. State*, 2017 S.D. 78, ¶ 5, 904 N.W.2d 358, 361 (quoting *Deadwood Stage Run, LLC v. S.D. Dep't of Revenue*, 2014 S.D. 90, ¶ 7, 857 N.W.2d 606, 609).  "Questions of law are reviewed *de novo*."  *Billman v. Clarke Mach., Inc.*, 2021 S.D. 18, ¶ 22, 956 N.W.2d 812, 819 (quoting *Kuhle v. Lecy Chiropractic*, 2006 S.D. 16, ¶ 16, 711 N.W.2d 244, 247).  "In interpreting statutes, 'we give words their plain meaning and effect, and read statutes as a whole.'"  *Fraternal Ord. of Police, Vermillion Lodge No. 19, Yankton Police Officers' Ass'n v. City of Yankton*, 2020 S.D. 52, ¶ 20, 949 N.W.2d 412, 417 (quoting *Reck v. S.D. Bd. of Pardons & Paroles*, 2019 S.D. 42, ¶ 11, 932 N.W.2d 135, 139).  "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only

function is to declare the meaning of the statute as clearly expressed." *Id.* (quoting *State v. Armstrong*, 2020 S.D. 6, ¶ 16, 939 N.W.2d 9, 13).

[¶25.] In a divorce, SDCL 25-4-44 explicitly authorizes the courts to "make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property, the court shall have regard for equity and the circumstances of the parties."

[¶26.] In addition to the entry of a divorce, the Legislature has created a separate remedy of legal separation. SDCL 25-4-17.2 provides that when a divorce is filed and a "court finds that there are irreconcilable differences, which have caused the irremediable breakdown of the marriage, it shall order the dissolution of the marriage or a legal separation." The statutes addressing a legal separation contemplate that a court is authorized to divide property. *See* SDCL 25-4-75 (providing authorization for a "court that has entered an original decree of marital annulment, dissolution, or legal separation and determined a division of the property" to reopen a case to consider omitted marital assets); SDCL 25-4-79 (providing a "court of this state that has entered an original decree of marital annulment, dissolution, or legal separation and determined the division of property has exclusive, continuing jurisdiction over the subsequent motions for omitted assets"). In contrast, the remedy of separate maintenance, provided for in SDCL 25-4-39 and SDCL 25-4-40, is distinct from a legal separation, and there is no

authority allowing a circuit court to equitably divide a marital estate when granting separate maintenance.[7]

[¶27.] SDCL 25-4-39 states that a "court may in an action for divorce provide for maintenance of a spouse and the children of the parties, or any of them, by the other spouse" when a "divorce is denied[.]" SDCL 25-4-40 also creates a cause of action for separate maintenance. Neither statute authorizes a court in a decree of separate maintenance to divide the marital assets. Rather, SDCL 25-4-40 by its plain language limits the court's "power to award[ing] temporary alimony, suit money, and permanent support for a spouse and the children of the parties[.]"[8]

---

7. Other jurisdictions have also recognized the distinction between legal separation and separate maintenance. *See Ariail v. Ariail*, 369 S.E.2d 146, 147 (S.C. Ct. App. 1988) ("An action for a legal separation, or limited divorce, and an action for separate maintenance are not the same."). Legal separation, originally referred to as divorce from bed and board (*a mensa et thoro*), has no effect on the spouses' marital bonds, but it does change their legal status and relieves each spouse of certain rights and obligations traditionally associated with marriage, such as cohabitation and consortium. *Brewer v. Brewer*, 129 S.E.2d 736, 737 (S.C. 1963) (cited in 24 Am. Jur. 2d *Divorce and Separation* § 5 (West 2023)). Conversely, separate maintenance developed as a legal mechanism to enforce a husband's duty to support his wife under the marital contract. 41 Am. Jur. 2d *Husband and Wife* § 166 (West 2023). In *Bueter v. Bueter*, this Court granted an order for separate maintenance because in light of "[t]he husband owing this duty of maintenance to the wife, we perceive[d] no good reason why she may not, independent of any other ground, maintain an action against him for its enforcement." 1 S.D. 94, 45 N.W. 208, 211 (1890). As used in our statutory scheme, separate maintenance is not intended to effectuate a legal separation; it merely provides separated spouses a cause of action to enforce the other spouse's duty of support until such time as the parties reconcile or obtain a judicial decree of divorce.

8. Krista also cites SDCL 43-4-22(17) which exempts real estate transfer fees for deeds filed with the register of deeds "[p]ursuant to a decree of divorce, annulment, or separate maintenance" to support her claim that the court has the authority to divide the marital assets. This provision exempts any real

(continued . . .)

[¶28.] Krista's counterclaim alleged a claim for separate maintenance under SDCL 25-4-40 on the grounds of extreme cruelty. Krista alternatively sought a divorce on the grounds of extreme cruelty in her counterclaim, while Joseph sought a divorce on the grounds of irreconcilable differences. In its findings of fact and conclusions of law, the circuit court awarded "Krista a Decree of Separate Maintenance pursuant to SDCL 25-4-40[.]" The court effectively denied Joseph's request for a divorce, stating an intention "to enter a Decree of Divorce on or about June 30, 2022" and retaining "jurisdiction to ensure compliance herewith and to enter the Judgment and Decree of Divorce." However, the entry of the decree and the division of the marital property were premised solely on the court's decision to award Krista "a Decree of Separate Maintenance from [Joseph] on the grounds of extreme cruelty[.]"

[¶29.] The circuit court was without authority to enter an equitable division of the marital property in the separate maintenance proceeding. In the absence of statutory authority to make a property division in a decree of separate maintenance, the circuit court abused its discretion in equitably dividing the marital property. "[A] circuit court abuses its discretion when it makes an error of law." *People ex rel. D.S.*, 2021 S.D. 63, ¶ 20, 967 N.W.2d 1, 6 (citation omitted).

---

(. . . continued)

estate transfer fees that occur arising out of a separate maintenance proceeding, but the statute does not authorize a court to make an equitable division of property as a part of a separate maintenance proceeding. Instead, this provision recognizes the possibility that a transfer of undivided marital property may occur in a separate maintenance proceeding. *See* SDCL 25-7-1 ("A person shall support himself or herself and his or her spouse out of his or her property or by his or her labor.").

Therefore, we reverse the property division and remand the case for an evidentiary hearing to equitably divide the property when the divorce decree is entered.[9]

### 3. *Permanent alimony.*

[¶30.] Joseph argues that the circuit court abused its discretion in awarding permanent alimony because the court failed to consider the parties' financial condition after the division of property. He notes the disparity in the property division and that after dividing the property he is obligated to pay over $76,000 in marital debt, while Krista is responsible for $30,000 in debt, $25,000 of which is owed to her mother. Joseph asserts that the award of $750 per month of permanent alimony is inconsistent with the property division and that the circuit court's findings are more consistent with rehabilitative alimony because Krista should be

---

9. Apart from the lack of authority to divide the assets in the separate maintenance decree, Joseph claims the circuit court abused its discretion in dividing the marital assets. To provide guidance on remand, we note two concerns in the circuit court's division of Joseph's military retirement. First, the court ordered that Krista would be "entitled to 50% of the marital portion of Joseph's military retirement which shall be transferred to her via a Military Qualifying Order following the granting of the divorce on or about June 30, 2022." This determination was not only premature, but also failed to consider that the military retirement may appreciate as a result of post-separation contributions by Joseph. The questions involving the valuation of this asset and whether Joseph's post-separation contributions should be treated as a marital asset require consideration of the appropriate legal factors and a contemporaneous valuation of the marital asset at the time of division. *See Dunham v. Sabers*, 2022 S.D. 65, ¶ 39, 981 N.W.2d 620, 636–37; *Parker v. Parker*, 2023 S.D. 5, ¶ 11 n.2, 985 N.W.2d 58, 62 n.2. The second area of concern is the court's order that "Joseph shall not take any action to reduce Krista's military benefits and, if he does so by transferring it to VA disability . . . he shall pay her the difference." This order is contrary to our recent decision in *Cook v. Cook*, 2022 S.D. 74, ¶ 26, 983 N.W.2d 180, 190, holding that federal law preempts a state court from indemnifying the other spouse when the military spouse converts all, or a portion of, military retirement to military disability.

able to return to college to increase her income once she has lifetime health insurance coverage.

[¶31.]     Joseph also argues that he does not have sufficient means to pay spousal support after the property division.  Joseph contends that the court only considered Krista's need for support without considering his ability to pay support to Krista, particularly after being ordered to pay most of the parties' debt, including the debt on Krista's vehicle.  Joseph asserts that Krista failed to meet her burden "to establish her need for alimony and [Joseph's] ability to pay." *Lovejoy v. Lovejoy*, 2010 S.D. 39, ¶ 7, 782 N.W.2d 669, 672.

[¶32.]     "We review alimony determinations under the abuse of discretion standard." *Leedom v. Leedom*, 2020 S.D. 40, ¶ 11, 947 N.W.2d 143, 147 (quoting *Haanen v. Haanen*, 2009 S.D. 60, ¶ 12, 769 N.W.2d 836, 841).  "[W]hen a party requests permanent alimony they must establish that they have a need for support and that their spouse has sufficient means and abilities to provide for part or all of the need." *Kolbach v. Kolbach*, 2016 S.D. 30, ¶ 16, 877 N.W.2d 822, 828 (alteration in original) (quoting *Fox v. Fox*, 467 N.W.2d 762, 767 (S.D. 1991)).  As it relates to the issues raised by Joseph on appeal, we have stated that "[t]he court's equitable division of property and spousal support are to be considered jointly because 'an award of more assets can eliminate or reduce the need for spousal support[.]'" *Id.* (second alteration in original) (quoting *Walker v. Walker*, 2009 S.D. 31, ¶ 11, 765 N.W.2d 747, 751).  "The symbiotic relationship between property division and spousal support requires consideration of the two together, as an award of more assets can eliminate or reduce the need for spousal support and vice versa." *Scherer*

*v. Scherer*, 2015 S.D. 32, ¶ 10, 864 N.W.2d 490, 494 (quoting *Terca v. Terca*, 2008 S.D. 99, ¶ 28, 757 N.W.2d 319, 326). "Therefore, '[t]he trial court's award of alimony and the division of property are considered together on appeal to determine whether the trial court abused its discretion.'" *Id.* (alteration in original) (quoting *Krage v. Krage*, 329 N.W.2d 878, 879 (S.D. 1983)).

[¶33.]     While it is not apparent from the court's findings that the court considered Joseph's ability to pay support to Krista, based upon our determination that the court did not have authority to divide the parties' assets in the decree of separate maintenance, we need not consider Joseph's claims of error in the court's decision awarding Krista $750 of spousal support. Our guiding principles require the circuit court to consider the question of spousal support in light of the property division. Therefore, the issue of spousal support, including Joseph's claims concerning his ability to pay permanent alimony, should be addressed anew on remand at the time the divorce decree is entered and the marital property is divided.

**Conclusion**

[¶34.]     We affirm the circuit court's decree of separate maintenance, but the court lacked authority to equitably divide the marital property as part of the decree of separate maintenance. We reverse the court's property division and remand to the circuit court for an evidentiary hearing to divide the marital assets at the time a divorce decree is entered. We also remand the spousal support award and direct the court to consider the question of spousal support while dividing the parties' assets as part of a divorce decree.

[¶35.]     KERN, SALTER, DEVANEY, and MYREN, Justices, concur.