#30670-r-MES
**2025 S.D. 25**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TYLER CHRISTIANSEN, TREVOR
DIETRICH, SHAUN DONELAN,
MATTHEW HENDRICKSON, KELSEY
LAMBERT, ETHAN MAY, and
CHRISTOPHER THACKER,                        Plaintiffs and Appellants,

    v.

MAJOR GENERAL MARK MORRELL,
ADJUTANT GENERAL OF THE
SOUTH DAKOTA DEPARTMENT OF THE
MILITARY,                                   Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

\* \* \* \*

BRIAN J. LAWLER of
Pilot Law, P.C.
San Diego, California

RONALD A. PARSONS, JR. of
Johnson, Janklow & Abdallah, LLP
Sioux Falls, South Dakota

\* \* \* \*

ARGUED
JANUARY 14, 2025
OPINION FILED **04/16/25**

* * * *

PAMELA R. REITER of
Reiter Law Firm LLC
Sioux Falls, South Dakota

ROBERT T. VORHOFF
New Orleans, Louisiana                    Attorneys for plaintiffs and
                                          appellants.


ROBERT B. ANDERSON of
May, Adam, Gerdes & Thompson LLP
Pierre, South Dakota

LTC JASON A. CAMPBELL
Staff Judge Advocate
South Dakota National Guard
Rapid City, South Dakota                  Attorneys for defendant and
                                          appellee.

#30670

SALTER, Justice

[¶1.]     The plaintiffs are seven members of the South Dakota Air National Guard.  They also work as federal civilian employees of the Department of the Air Force and are supervised under the authority of the South Dakota Adjutant General.  In their civilian roles, the plaintiffs are entitled to 15 days of paid military leave each year.  In this action, they allege the Adjutant General wrongfully denied them military leave while they were serving on active duty, in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301–35.  After a court trial, the circuit court dismissed the USERRA claims *sua sponte* without reaching the merits of the parties' arguments, concluding the plaintiffs must demonstrate the existence of an antimilitary animus.  The plaintiffs appeal.  We conclude that the plaintiffs are entitled to military leave and, accordingly, reverse and remand for further proceedings.

### Factual and Procedural Background

[¶2.]     Plaintiffs Tyler Christiansen, Trevor Dietrich, Shaun Donelan, Matthew Hendrickson, Kelsey Lambert, Ethan May, and Christopher Thacker are members of the South Dakota Air National Guard and work in a full-time civilian capacity as "dual status technicians" under 32 U.S.C. § 709.[1]  As dual status technicians, the plaintiffs are federal civilian employees of the Department of the

---

1.     Donelan and Hendrickson have since resigned as dual status technicians. However, both were serving as dual status technicians during the times relevant to this appeal.

-1-

Air Force. *See* 32 U.S.C. § 709(b)(1).[2] They work as civilians during the week and serve as members of the Air National Guard who complete monthly drills and annual training, resulting in their "dual status." *See Parker v. Parker*, 2023 S.D. 5, ¶ 5, 985 N.W.2d 58, 60–61 (quoting *Babcock v. Kijakazi*, 595 U.S. 77, 80–81, 142 S. Ct. 641, 644, 211 L. Ed. 2d 424 (2022)) (explaining dual status technicians).

[¶3.]     Beginning in 2016 and at different points thereafter, each plaintiff accepted orders placing them on active duty as members of the Air National Guard. The plaintiffs took leaves of absence from their federal civilian positions and were assigned to the 114th Fighter Wing at Joe Foss Field Air National Guard Station in Sioux Falls. The plaintiffs' orders were known as active guard and reserve (AGR) orders and stated they were issued pursuant to "32 USC 328" and "502(F)[.]"

[¶4.]     Active duty under Title 32 of the United States Code is noteworthy. Though service members serve on active duty, they do so in their capacity as members of the National Guard, not a federal component of the armed forces. Therefore, they remain under the control of state governors and subject to state

---

2.     A technician must meet the following requirements:

(1)     Be a military technician (dual status) as defined in section 10216(a) of title 10.

(2)     Be a member of the National Guard.

(3)     Hold the military grade specified by the Secretary concerned for that position.

(4)     While performing duties as a military technician (dual status), wear the uniform appropriate for the member's grade and component of the armed forces.

32 U.S.C. § 709(b).

military law. *See* 32 U.S.C. § 328 (governor as commander-in-chief); SDCL 33-2-1 ("The Governor is the commander in chief of the militia of the state[.]"); SDCL 33-2-8 ("The militia, while in active service, shall be governed by the military law of the state.").

[¶5.] The plaintiffs' AGR orders here included individual provisions which allowed the plaintiffs to temporarily "convert" their Title 32 Air Guard status to federal status under Title 10 of the United States Code. The orders then allowed the plaintiffs to "revert" back to the original Title 32 status after the expiration of their Title 10 orders. The distinction between Title 32 and Title 10 is legally significant. Under Title 10 authority, service members do not serve as members of a state militia but instead serve in a federal component of the armed forces under the control of the President as commander in chief and subject to the Uniform Code of Military Justice. *See, e.g.*, 10 U.S.C. §§ 12301(d), 12302(a) (assigning authority to mobilize reservists to "the Secretary concerned[,]" however the President, as commander in chief of the armed forces, is ultimately responsible for the decision to order reservists to active duty (U.S. Const. art. II, § 2.)); 10 U.S.C. § 12304(a) ("the President determines [when] it is necessary to augment the active forces"). *See* 10 U.S.C. § 802 (noting persons subject to the Uniform Code of Military Justice).

[¶6.] In addition, the nature of the plaintiffs' military assignments also changed when their status switched from Title 32 to Title 10. Though the AGR orders themselves do not state their purpose in detail, they are issued under 32 U.S.C. § 328, and plaintiffs' counsel has acknowledged that while operating under Title 32 AGR orders, the plaintiffs' responsibilities were limited to "organizing,

administering, recruiting, instructing, or training[.]" 10 U.S.C. § 101(d)(6)(A); *see* 32 U.S.C. § 328(a) (authorizing state governors to "order a member of the National Guard to perform Active Guard and Reserve duty"). However, in a Title 10 status, the plaintiffs' duties were not so narrowly limited.

[¶7.] In fact, the AGR orders at issue here acknowledge as much. They state, in relevant part, that "[u]pon approval and by order of federal command authority, [Air National Guard] AGR Airmen will convert to Title 10 U.S.C. Section 12301(d)/12302/12304 status (as appropriate) when performing duty . . . *supporting Active Duty requirements for operations/missions/exercises.*"[3] (Emphasis added.) The AGR orders also provide they "will be amended to include any Title 10 duty for 30 or more consecutive days and reflect the Title 10 authority, Title 10 duty inclusive dates, named mission and GMAJCOM being supported." Further, the orders state that "[w]hile performing duty under Title 10 orders, AGR Airmen are assigned to the 201st MSS, ANGRC, Joint Base Andrews, MD for [administrative control] purposes and subject to the Uniform Code of Military Justice (UCMJ)."

[¶8.] Sometime after accepting AGR orders, each plaintiff received additional orders, converting them from Title 32 status to Title 10 status for a period of time. The principal issue in this appeal is whether the plaintiffs should have accrued military leave as part of their civilian employment while they were serving on active duty in a Title 10 status.

---

3. The plaintiffs' individual AGR orders do not appear to vary in any material way.

[¶9.] Like other federal civilian employees who also serve in the military, the plaintiffs are entitled to 15 days of paid military leave under 5 U.S.C. § 6323(a)(1) annually.[4] Military leave accrues at the beginning of each fiscal year, meaning all dual-status technicians should be credited with 15 days of paid military leave on October 1 of each year. 5 U.S.C. § 6323(a)(1) ("Leave under this subsection accrues for an employee or individual at the rate of 15 days per fiscal year and, to the extent that it is not used in a fiscal year, accumulates for use in the succeeding fiscal year until it totals 15 days at the beginning of a fiscal year.").

[¶10.] A federal employee "performing service with the uniformed services must be permitted, upon request, to *use* any accrued . . . miliary leave under 5 U.S.C. 6323, . . . if appropriate, during such service." 5 C.F.R. § 353.208 (emphasis added); *see also* 38 U.S.C. § 4316(d) ("Any person whose employment with an employer is interrupted by a period of service in the uniformed services shall be permitted . . . to *use* during such period of service any vacation, annual, or similar leave with pay accrued by the person before the commencement of such service." (emphasis added)). However, Air Guard officials did not allow the plaintiffs to accrue the military leave, and they were, accordingly, unable to use it during their

---

4.      Plaintiffs are considered "employees" under 5 U.S.C. 6323(a)(1) because they are "appointed in the civil service by . . . a member of a uniformed service; . . . engaged in the performance of a Federal function . . . and subject to the supervision of" a member of a uniformed service. 5 U.S.C. §§ 2105(a)(1)(C), (2), (3); 10 U.S.C. § 10216(a)(2) ("Military technicians (dual status) shall be authorized and accounted for as a separate category of *civilian* employees." (emphasis added)); *see also Ohio Adjutant Gen.'s Dep't v. Fed. Lab. Rels. Auth.*, 598 U.S. 449, 461, 143 S. Ct. 1193, 1201, 215 L. Ed. 2d 426 (2023) ("Each dual-status technician is an employee of the Department of the Army or the Department of the Air Force[.]").

active duty. Doing so would have allowed them to obtain 15 days of paid military leave from their civilian jobs in addition to their military pay.

[¶11.] The plaintiffs commenced this action against the Adjutant General,[5] alleging a violation of USERRA "by depriving [p]laintiffs of employment benefits by not allowing the accrual of military leave under 5 U.S.C. § 6323(a)(1) or use of military leave pursuant to 5 C.F.R. § 353.208 while on Title 10 orders, even though those same benefits are available to other National Guard technicians during periods of active military duty."[6] The plaintiffs sought declaratory and injunctive relief to accrue and use military leave, damages for their lost benefits, and statutory attorney fees and expenses.[7]

[¶12.] In his answer, the Adjutant General asserted "that 32 U.S.C. § 709(g)(2) as amended prohibits technicians such as these Plaintiffs from being able to claim military leave during periods of AGR duty. Their original orders are AGR orders and, during their period of AGR duty, 32 U.S.C. § 709 prohibits them from claiming military leave." The referenced statute—32 U.S.C. § 709(g)(2)—does

---

5. The Adjutant General of the South Dakota Air National Guard is the employer of a National Guard dual-status civilian technician for purposes of USERRA. 38 U.S.C. § 4303(4)(B) ("In the case of a National Guard technician employed under section 709 of title 32, the term 'employer' means the adjutant general of the State in which the technician is employed.").

6. We view the plaintiffs' claims as implicating only the question of whether they were unlawfully prevented from using military leave because they were not able to accrue it. We do not understand the plaintiffs' claims to be that they were prevented from using military leave they had accrued in their civilian roles *before* accepting AGR orders.

7. USERRA provides state courts with jurisdiction over actions brought "against a State (as an employer) by a person[.]" 38 U.S.C. § 4323(b)(2).

provide for an exception under which dual status technicians are not eligible for the 15 days of paid military leave when they are "performing active Guard and Reserve duty," but under 10 U.S.C. § 101(d)(6), the exception only applies when the active Guard and Reserve duty lasts for 180 consecutive days or more.

[¶13.]     Following discovery, the parties entered into a joint stipulation of facts, consisting of the details of plaintiffs' AGR orders, including the periods when each plaintiff served under federal Title 10 status.  The circuit court conducted a bench trial in December 2023, which the parties agreed would address only the legal issue of liability under USERRA with the issue of damages and attorney fees reserved in the event the circuit court found in favor of plaintiffs.

[¶14.]     At trial, the sole witness to testify was Brigadier General Deborah Bartunek, Director of the Joint Staff for the South Dakota National Guard. According to General Bartunek, the plaintiffs' Title 10 orders for federal military service did not change their Title 32 status as Air Guard members.  She testified that "dual status technicians are always Title 32" and that the "AGR orders can be AGR Title 32 or AGR Title 10."  When asked whether "the AGR order contemplated both statuses[,]" General Bartunek replied, "It subsumed it, yes."  She further explained that the original AGR order "eliminates the need to end this order, and then publish another order for Title 10."

[¶15.]     At the end of the trial, the circuit court engaged counsel, principally plaintiffs' counsel, in a discussion of the applicable federal law.  The court's questions related to the 15-day military leave benefit available to federal employees and the impact of an employee's decision to accept AGR orders.  Among other

things, the court asked whether allowing the plaintiffs to receive 15 days of military leave permits "double dipping."

[¶16.] The plaintiffs' counsel addressed any concern in this regard by stating that the plaintiffs were no different than other federal employees who are also members of the military, all of whom receive 15 days of paid military leave each fiscal year which they can use while they complete their military obligations in addition to the military pay they receive. Plaintiffs' counsel explained 32 U.S.C. § 709 was amended in 2016 to add subsection (g)(2) in an effort "to prevent double dipping" for longer periods of AGR service of 180 days or more. Plaintiffs' counsel explained that prior to its enactment, dual status technicians on AGR Title 32 duty 365 days a year without receiving Title 10 orders would receive "15 days [of military] leave for doing the same job that they were doing as a National Guard Tech."

[¶17.] In a subsequent written opinion, the circuit court acted *sua sponte* to dismiss the plaintiffs' complaint. The court cited 38 U.S.C. § 4301, which sets forth the purposes of USERRA, and *Staub v. Proctor Hospital*, 562 U.S. 411, 422, 131 S. Ct. 1186, 1194, 179 L. Ed. 2d 144 (2011) and held that the plaintiffs were required to prove that the Adjutant General was "motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action . . . [in order to be] liable under USERRA." However, in the court's view, the plaintiffs had failed to plead or prove the antimilitary animus that it believed was a necessary element of a USERRA claim.

[¶18.] The circuit court's "primary finding of fact . . . [was] that the Defendant's determination on the benefit issue in this case was made upon a good faith attempt to interpret complex federal statutes and was not motivated in any way upon illegal military animus." As a matter of law, the court determined "there [was] no USERRA violation in this matter, and the case shall be dismissed upon the merits." The court did not consider "whether the benefits sought by Plaintiffs are owing outside the context of a valid USERRA claim" which the court considered "moot" given its decision.

[¶19.] The plaintiffs filed a motion for a new trial and reconsideration of the memorandum decision. In a March 2024 email decision, the circuit court denied the plaintiffs' motion, stating "I believe that the reasoning set forth in my Memorandum Decision herein is the correct application of the USERRA law to the particular facts of this case and I shall adhere to it."

[¶20.] The plaintiffs have appealed, challenging the circuit court's holding that they must show antimilitary animus. The plaintiffs also press the merits of the claim that the Adjutant General, acting as their civilian employer, violated USERRA by not allowing them to accrue or use military leave while performing active duty under Title 10.

## Analysis and Decision

### *USERRA and antimilitary animus*[8]

[¶21.] In a preliminary section contained within its enactment of USERRA, Congress identified three legislative purposes:

> (1) to encourage service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
>
> (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
>
> (3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301(a). It was also "the sense of Congress that the Federal Government should be a model employer in carrying out the provisions" of USERRA. 38 U.S.C. § 4301(b).

[¶22.] USERRA effectuates these purposes through a number of substantive provisions including 38 U.S.C. § 4311(a) which provides that "[a] person who is a member of . . . a uniformed service shall not be denied . . . any *benefit of employment* by an employer on the basis of that membership . . . ." (Emphasis added.) A "benefit of employment" includes "any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or

---

8. Our interpretation of USERRA and the circuit court's decision to dismiss the plaintiffs' claims turn on questions of statutory interpretation which we review de novo. *LeFors v. LeFors*, 2023 S.D. 24, ¶ 24, 991 N.W.2d 675, 683 (citation omitted).

practice[.]" 38 U.S.C. § 4303(2). "[M]ilitary leave afforded by 5 U.S.C. § 6323(a) is a benefit of employment." *Pucilowski v. Dep't of Just.*, 498 F.3d 1341, 1344 (Fed. Cir. 2007); *see also Butterbaugh v. Dep't of Just.*, 336 F.3d 1332, 1336 (Fed. Cir. 2003) (referring to military leave as a benefit of employment under USERRA).[9]

[¶23.]     Generally, the protections afforded by USERRA are triggered when an employer has denied "any benefit of employment" in instances where "the person's membership, . . . service, . . . or obligation for service in the uniformed services is a motivating factor in the employer's action[.]" 38 U.S.C. § 4311(c)(1); *see also Adams v. Dep't of Homeland Sec.*, 3 F.4th 1375, 1377 (Fed. Cir. 2021) (citing *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)) (stating test). However, contrary to the circuit court's determination, this does not mean that a USERRA claimant must show an antimilitary animus in all cases.

[¶24.]     "[W]hen the benefit in question is only available to members of the military, claimants do not need to show that their military service was a substantial or motivating factor." *Adams*, 3 F.4th at 1377–78 (citing *Butterbaugh*, 336 F.3d at 1336).[10] *See also Maiers v. Dep't of Health & Hum. Servs.*, 524 Fed. Appx. 618, 623

---

9.     While the decisions of the Federal Circuit are not binding here, they do carry a particular measure of persuasiveness because it is the reviewing court for decisions of the Merit Systems Protection Board, *see* 5 U.S.C. § 7703(b)(1)(A), where many USERRA claims involving federal benefits are litigated.

10.     We cannot accept the Adjutant General's claim that *Adams's* holding eliminating the military animus requirement for purely military benefits is dicta. The recognition that this affected class of USERRA claimants need not show that their military service was a substantial or motivating factor in the denial of a benefit was part and parcel of the court's decision which concerned the benefit of civilian/military differential pay available only to military employees.

(Fed. Cir. 2013) ("[C]laimants need not show that their military service was a substantial motivating factor when the benefits at issue were only available to those in military service."). Here, the benefit in question is military leave which is only available to civilian employees who are also military members; non-military employees are not, of course, entitled to military leave. *See* 5 U.S.C. § 6323.

[¶25.] Consequently, the circuit court erred when it held that the plaintiffs must show an antimilitary animus for their USSERA claims. The court relied upon two decisions, but both are inapposite because they deal with the universal USERRA benefit of continued employment, not a particular benefit only available to members of the military. *See Staub*, 562 U.S. at 413–14, 131 S. Ct. at 1189 (USERRA claimant alleged the denial of continued employment after being terminated because his duties as an Army Reservist caused him to miss time as an angiography technician at a civilian hospital); *Ayoub v. Bd. of Cnty. Comm'rs ex rel. Santa Fe*, 964 F. Supp. 2d 1288, 1289–90 (D.N.M. 2013) (USERRA claimant was a county corrections officer who alleged he was fired upon informing his employer he had enlisted in the military and was scheduled to report for duty in six months).

[¶26.] Though the Adjutant General did not argue the plaintiffs' USERRA claims should be dismissed for failing to demonstrate antimilitary animus, he now claims that the circuit court's "action protects the integrity of the USERRA statutes and gives meaning to the entire statutes—not just a portion." The court's *sua sponte* favorable ruling may seem opportune for the Adjutant General, but it is also unavailing. By giving undue weight to USERRA's anti-discriminatory purpose statement, the Adjutant General incorrectly accords it preeminence and endorses

the court's error. *See Georgia v. President of the U.S.*, 46 F.4th 1283, 1298 (2022) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 219 (2012)) (statements of legislative purpose do not "add to the specific dispositions of the operative text").

[¶27.]     Under the circumstances presented here, the circuit court's antimilitary animus theory led to a particularly incongruent result in which the plaintiffs had to show that the Adjutant General, himself a serving military officer, demonstrated an antimilitary animus. We reverse the court's decision to dismiss the plaintiffs' claims and continue our analysis by examining the merits of the plaintiffs' claims which were fully briefed by the parties and involve purely legal issues set against a developed factual record.

### *Military leave for dual status technicians*

[¶28.]     The benefit available under 5 U.S.C. § 6323(a)(1) that allows 15 days of military leave for federal civilian employees is subject to an important exception. As indicated above, the exception, set out in 32 U.S.C. § 709(g)(2), provides that military leave "does not apply to a person employed under this section who is performing active Guard and Reserve duty (as that term is defined in section 101(d)(6) of title 10)." Section 101(d)(6) of Title 10, in turn, defines "active Guard and Reserve duty" as "active duty performed by a member of . . . the National Guard pursuant to an order to full-time National Guard duty, for a period of 180 consecutive days or more for the purpose of organizing, administering, recruiting, instructing, or training the reserve components."

[¶29.]    This is to say that a dual status technician "performing active Guard and Reserve duty" is entitled to 15 days of military leave *unless* the AGR duty is:

> (1) "full-time National Guard duty performed by a member of the National Guard pursuant to an order to full-time National Guard duty[;]"
>
> (2) "for a period of 180 consecutive days or more[;]"
>
> (3) "for the purpose of organizing, administering, recruiting, instructing, or training the reserve components."

10 U.S.C. § 101(d)(6)(A).

[¶30.]    Synthesizing these statutes leads to two plainly stated rules: (1) all federal civilian employees who also serve in the military are entitled to 15 days of paid military leave each fiscal year; and (2) dual-status technicians may receive the 15-day military leave benefit but not if they are performing active Guard and Reserve duty, as defined in 10 U.S.C. § 101(d)(6)(A).

[¶31.]    The parties do not dispute that all plaintiffs were initially called to active duty as Air National Guard members pursuant to Title 32.  Nor is there disagreement about the purpose of their AGR orders; they were issued pursuant to 32 U.S.C. § 328 which refers to both "Active Guard and Reserve duty" under 10 U.S.C. § 101(d)(6) and also to "organizing, administering, recruiting, instructing, and training the reserve components."[11]  32 U.S.C. § 328(a)-(b).

---

11.    We pause here to distinguish AGR orders from the discrete statutory term, "Active Guard and Reserve duty."  At the risk of creating confusion, we have adopted the parties' designation of the Plaintiffs' orders as AGR orders which we view as a generic reference to serving on active duty as a member of the National Guard pursuant to Title 32.  And though AGR orders can lead to a period of Active Guard and Reserve *duty*, the latter's temporal requirement of 180 or more consecutive days means that AGR orders are not the same as Active Guard and Reserve duty until reaching that point.

-14-

[¶32.]     And the parties' stipulated facts appear to indicate that at least two of the plaintiffs served less than 180 consecutive days of Title 32 AGR active duty. But at oral argument, the plaintiffs confirmed that they are not seeking military leave for this time. Instead, they are engaged in a concerted effort to obtain military leave benefits they contend should have accrued while they were on active duty in the Air Force pursuant to Title 10.

[¶33.]     The plaintiffs' legal theory for military leave in this regard can be simply stated. Because their federal military service is, by definition, not active Guard and Reserve duty, the plaintiffs argue that the military leave exclusion for dual-status technicians set out in 32 U.S.C. § 709(g)(2) (and 10 U.S.C. § 101(d)(6)) does not apply. And, as a result, the provisions of 5 U.S.C. § 6323(a)(1) control, and the plaintiffs are entitled to military leave like any other federal employee.

[¶34.]     We agree. Once the plaintiffs accepted active-duty orders under Title 10, their status and the authority under which they were serving necessarily changed. The Title 10 orders could not, of course, serve as the basis for authorizing "active Guard and Reserve duty (as that term is defined in section 101(d)(6) of title 10)." 32 U.S.C. § 709(g)(2). This is because the statute requires "full time National Guard duty" to be "training or other duty . . . performed by a member of . . . the Air National Guard of the United States in the member's status as a member of the National Guard of a State . . . *under section 316, 502, 503, 504, 505 of title 32*[.]" 10 U.S.C. § 101(d)(5) (emphasis added). The plaintiffs were no longer "performing active Guard and Reserve duty" because they were serving under Title 10, in

support of active-duty missions, not Title 32, for the purpose of organizing, administering, recruiting, instructing, or training the reserve components.

[¶35.] Conspicuously, the Adjutant General does not offer a detailed statutory argument. He generally invokes the 15-day military leave benefit exception set out in 32 U.S.C. § 709(g)(2) for employees who accept AGR orders and then advances the claim that the plaintiffs' AGR orders continued even during the intervening periods of the plaintiffs' Title 10 service. The justification lies in a causal argument that posits the Plaintiffs should not receive military leave because their Title 10 orders did not draw them from their civilian employment—the AGR orders did. But 5 U.S.C. § 6323(a)(1) includes no such causal requirement. It simply states that "an employee . . . , permanent or temporary indefinite, *is entitled to leave . . . for active duty*[.]" (Emphasis added.)

[¶36.] For this reason, we cannot accept the legal opinion offered by General Bartunek in her testimony, asserting that the intervening Title 10 orders were "subsumed" into the AGR orders. This view not only fails to account for the unambiguous provisions of 5 U.S.C. § 6323(a)(1), but it also exalts the primacy of the locally issued orders, themselves, over the nature of plaintiffs' duty and the statutes that authorize and govern it.

[¶37.] Indeed, the Adjutant General's overlapping-orders argument is starkly at odds with settled statutory and decisional law which provides that the plaintiffs could *not* serve simultaneously on active duty as members of a state militia and also as members of the United States Armed Forces. Although state Air National Guard members are also members of the National Guard of the United States, they do not

-16-

actively serve in both roles at the same time. *See Perpich v. Dep't of Def.*, 496 U.S. 334, 347, 110 S. Ct. 2418, 2426, 110 L. Ed. 2d 312 (1990) ("The unchallenged validity of the dual enlistment system means that the members of the National Guard of Minnesota who are ordered into federal service with the National Guard of the United States lose their status as members of the state militia during their period of active duty."). Congress has specifically recognized this rule in 32 U.S.C. § 325(a)(1) which generally provides that "each member of the Army National Guard of the United States or the Air National Guard of the United States who is ordered to active duty is relieved from duty in the National Guard of his State . . . from the effective date of his order to active duty until he is relieved from that duty."[12]

[¶38.] Our state statutes offer a consistent view of the state militia/federal service dichotomy. Members of the South Dakota National Guard are subject to state military law which, among other things, establishes the Governor as the commander in chief. *See* 32 U.S.C. § 328 (governor as commander in chief); SDCL 33-2-1 ("The Governor is the commander in chief of the militia of the state[.]"); SDCL 33-2-8 ("The militia, while in active service, shall be governed by the military law of the state.").

[¶39.] But a Guard member's status changes when called to federal service in an active-duty component of the armed forces. The President is their commander in

---

12. Section 325 contains an exception not relevant here for "officers" who may serve concurrently in the federal service and in the National Guard subject to the approval of the President and the affected state Governor. 32 U.S.C. § 325(a)(2).

chief, their chain of command is comprised of other federal service members, and they are subject to the Uniform Code of Military Justice. *See, e.g.*, 10 U.S.C. §§ 12301(d), 12302(a) (assigning authority to mobilize reservists to "the Secretary concerned[,]" however the President, as commander in chief of the armed forces, is ultimately responsible for the decision to order reservists to active duty (U.S. Const. art. II, § 2.)); 10 U.S.C. § 12304(a) ("the President determines [when] it is necessary to augment the active forces"); 10 U.S.C. § 802 (noting persons subject to the Uniform Code of Military Justice); s*ee also Garrett v. Morgan Cnty. Sheriff's Off.*, 2024 WL 3361462, at *11 (N.D. Ohio 2024) ("[W]hen the National Guard is called into federal active duty pursuant to Title 10, Guardsmen are completely stripped of their state status and become fully integrated into the United States military, subject to federal command." (alteration in original)). In other words, active-duty state military service and active-duty federal military service for the plaintiffs here were mutually exclusive.

[¶40.] And, finally, even if the case turned on the text of the AGR orders—which we conclude it does not—the orders do not support the Adjutant General's position that the plaintiffs were simultaneously serving in the Air Guard and the active-duty Air Force when they were executing their Title 10 orders. The operative portion of the AGR orders issued pursuant to 32 U.S.C. § 328 and § 502(f) provides as follows:

> Upon approval and by order of federal command authority, ANG AGR Airmen will *convert* to Title 10 U.S.C. Section 12301(d)/12302/12304 status (as appropriate) when performing duty, OCONUS or CONUS, supporting Active Duty requirements for operations/missions/exercises. This AGR order will be amended to include any Title 10 duty for 30 or more

consecutive days and reflect the Title 10 authority, Title 10 duty inclusive dates, named mission and GMAJCOM being supported. . . . *While performing duty under Title 10 orders, AGR Airmen are assigned to the 201st MSS, ANGRC, Joint Base Andrews, MD for ADCON purposes and subject to the Uniform Code of Military Justice (UCMJ). AGR Airman will revert to their original Title 32 U.S.C. Section 502(f) status upon completion of this period.* This policy applies to both CONUS and OCONUS duty supporting current or future operations. By order of the commander, ANG AGR Airmen will convert to Title 10 U.S.C. 10147 status when performing duty OCONUS for training purposes.[13]

(Emphasis added.)

[¶41.]     This provision does not demonstrate one continuous period of AGR duty under Title 32. By its express terms, this text contemplates separate and legally distinct periods of duty during which each plaintiffs' AGR Title 32 state-militia status was temporarily suspended in favor of federal service under Title 10 orders, after which the plaintiffs again reverted back to Title 32 status.

[¶42.]     It may be that the Adjutant General's simultaneous-service argument has more to do with convenience than the law. As General Bartunek explained in her testimony, it may be somewhat difficult to issue new AGR orders upon the expiration of each period of Title 10 service while maintaining a National Guard member's seamless period of continuous active duty. Therefore, General Bartunek testified that one set of AGR orders is issued containing self-executing provisions

---

13.     The terms CONUS and OCONUS are shorthand references to "continental United States" and "outside continental United States," respectively. Similarly, GMAJCOM stands for "gaining major command" and ADCON means "administrative control."

under which a National Guard member "reverts" back to Title 32 AGR status after completing a period of Title 10 service.[14]

[¶43.] Whatever the reason, the Adjutant General has not offered a sufficient *legal* basis for its all-encompassing AGR orders theory. And we conclude that the plaintiffs could, at any given time, be on active duty under either Title 32 or Title 10, but not both. As a result, when the plaintiffs received Title 10 orders, their Title 32 AGR status ended, temporarily, and their duties changed from organizing, administering, recruiting, instructing, or training the reserve components to supporting active-duty operations, missions, or exercises. Once plaintiffs converted to Title 10 duty, the exception of 32 U.S.C. § 709(g)(2) does not apply, and the provisions of 5 U.S.C. § 6323(a)(1) allowing 15 days of military leave control.

[¶44.] We conclude that the plaintiffs are entitled to the accrual of military leave while in Title 10 status and, accordingly, reverse and remand for further proceedings consistent with this opinion.

[¶45.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

14. Although the Adjutant General does not cite it, guidance from an internal Air National Guard Instruction, ANGI 36-101, states "[Air National Guard] AGR Airmen are still considered AGRs during the period of Title 10 service" and "AGRs called or ordered to Title 10 federal active duty . . . will not be terminated from their Title 32 U.S.C. Section 502(f) orders." Air National Guard Instruction 36-101, *Air National Guard Active Guard Reserve (AGR) Program* 29-30, (2010). It is unclear if this is the genesis of the Adjutant General's position, but it is clear that he is not relying upon it as a source of authoritative law or as a basis to affirm the circuit court.